STATE of Alaska, Appellant,

v.

Windie Lamar JOHNSON, Appellee.

No. 1875.

Supreme Court of Alaska.

Aug. 16, 1974.

James M. Hackett, Asst. Dist. Atty., Monroe N. Clayton, Dist. Atty., Fairbanks, John E. Havelock, Atty. Gen., Juneau, for appellant.

Stephen R. Cline, Asst. Public Defender, Fairbanks, Herbert D. Soll, Public Defender, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

CONNOR, Justice.

On October 10, 1972, a grand jury returned an indictment against appellee Windie Lamar Johnson for grand larceny. The only witness before the grand jury was an employee of the store where the larceny had allegedly taken place. This witness, Mr. Richard Glessner, had not actually seen Johnson take any items. He had, however, participated in the apprehension of Johnson. The state had intended to call as a second witness before the grand jury the store security guard, Ms. Jo Ann Miller, who allegedly saw Johnson re-move the items from the store. This security guard was out of the state when the grand jury met, having been called away only two days previously because her father was dying. The employee who did testify described to the grand jury not only what he saw, but also what he said the security guard had told him.

On December 6, 1972, Johnson filed a motion to dismiss the indictment because of insufficiency of evidence presented to the grand jury. The motion was supported by an affidavit of Johnson's attorney stating that crucial parts of the only witness' grand jury testimony were hearsay. The motion was further supported by a memorandum of law citing Taggard v. State, 500 P.2d 238 (Alaska 1972), for the proposition that where hearsay evidence is presented to a grand jury, the credibility of the hearsay informant must be established.

The state's opposition to Johnson's motion to dismiss consisted of a single sentence requesting denial of the motion "because there was sufficient evidence presented to the grand jury and because Mr. Glessner testified from personal knowledge and observation." No memorandum of law, affidavits or other supporting authority were attached to or cited in the state's opposition motion.

At the December 14, 1972, hearing on the motion to dismiss, the court elected to treat Johnson's motion as unopposed since the state's opposition motion was "unsupported by anything" and did not "traverse the allegations in [Johnson's] motion in any way that I can see." The court characterized the state's opposition motion as simply "an invitation to the court to deny the motion because you wish you could go ahead and try it." The court considered this insufficient and granted the motion for dismissal of the indictment. After a motion for rehearing was denied, the state appealed.

Appellee Johnson first argues that this court does not have jurisdiction to hear this appeal. Under the jurisdictional

authority cited by the state, AS 22.05.-010(a) and Supreme Court Rule 6,[1] the state has a right to appeal in criminal cases only to "test the sufficiency of the indictment" or on the ground that the sentence is too lenient. Johnson contends that the sufficiency of the indictment is not at issue in the present appeal and that, therefore, this court has no jurisdiction over the matter. According to Johnson, this appeal is from a decision on a procedural matter relating to motion practice, and the actual indictment itself is not involved at all. We disagree. While it is true that the actual basis for the trial court's decision was the insufficiency of the state's opposition, it is also true that the order which the court signed indicated that the indictment was being dismissed "for the reason that there was insufficient evidence presented to the grand jury to warrant an indictment of grand larceny." Since the effect of the trial court's decision was to dismiss the indictment on the ground of insufficient evidence, this court has jurisdiction under AS 22.05.010(a) and Supreme Court Rule 6 to review the dismissal.

Johnson next contends that based on Civil Rules 77(e)(2) and 77(f)(2), the trial court properly elected to treat the motion to dismiss as unopposed.

Civil Rule 77 governing motion practice is made applicable to criminal actions by Criminal Rule 50(b).[2]

Civil Rule 77(e)(2) at the time the motions were filed stated:

"(2) The Opposing Party. Not less than 2 days prior to the hearing of a motion, the opposing party shall serve the following:

[a] Copies of all photographs, affidavits and other documentary evidence upon which he intends to rely, *together with a brief, complete written statement of reasons in opposition to the motion, which shall include a memorandum of points and authorities in support of such a statement*; or

[b] A written statement that he will not oppose the motion." (emphasis added)

Civil Rule 77(f)(2) stated:

"(f) WAIVER.

(2) By Opposing Party. When a party opposing a motion fails to comply with the provisions of subdivision (e)(2) of this rule, the court may consider this as a consent to the granting of the motion."

In the recent case of Schandelmeier v. Winchester Western, 520 P.2d 70 (Alaska 1974), this court stated the following with respect to Civil Rule 77(f)(2):

"The discretion granted the lower court in subdivision (f)(2) of former Civil Rule 77 does not mean that the court need not examine a motion and any supporting memorandum submitted by the moving party when there is defective opposition to the motion. A court should scrutinize both the motion and supporting memorandum in order to determine whether granting of the motion is warranted." 520 P.2d at 75.

As was there stated, this was particularly true in the *Schandelmeier* case where the dismissal was with prejudice and meant the dismissed party effectively lost his day in court. The dismissal in the present case was neither so inappropriate[3] nor so harsh

---

1. Supreme Court Rule 6 is now Rule 5 of the Rules of Appellate Procedure of the State of Alaska.

2. Criminal Rule 50(b) states:
   "(b) Civil Rules to Apply. All other provisions of the Rules of Civil Procedure relating to attorneys, *regarding applications to the court*, stipulations, examining witnesses, counsel as a witness, arguments on motions or hearings, non-resident attorneys, and disbarment and discipline, shall apply

to practice in criminal actions in the courts of the state." (emphasis added)
Since "applications to the court" for orders are made by motion, the present motion fits within Criminal Rule 50(b) and must meet the requirements of Civil Rule 77.

3. *In Schandelmeier* the motion to dismiss was based on the failure of a witness to appear for a deposition. This court found that dismissal of the action was an inappropriate sanction in such a case, stating

a sanction as that involved in *Schandelmeier*. The state in the present case would not have lost its day in court since it could apparently have immediately reindicted Johnson if it wished to do so. Despite this difference in the two cases, it remains the duty of the trial court to carefully examine the papers it has before it, *i. c.,* the motion and any supporting memoranda and/or affidavits, before determining whether the motion should be granted.[4] In the present case a closer examination of Johnson's memorandum of law supporting his motion to dismiss and the authority cited therein, Taggard v. State, 500 P.2d 238 (Alaska 1972), would have revealed the weakness of Johnson's argument. It is fairly clear from both the memorandum and from statements at the hearing on the motion that Johnson's counsel misread *Taggard's* requirement that the credibility of the hearsay informant be established when hearsay is presented to a grand jury. It is apparent that Johnson's counsel believed it is the credibility of the witness before the grand jury that is put in issue by *Taggard,* while in fact it is, of course, the credibility of the absent hearsay informant (Ms. Miller in this case) that *Taggard* seeks to have established. Unfortunately the state also appears to have misread *Taggard,* for it failed to point out the error in Johnson's interpretation to the trial court.

The court would then still have been left with the question of Ms. Miller's credibility. The failure of either party to present the trial court with a transcript of the grand jury proceedings put the court at great disadvantage in deciding this question. However, even though the state was probably in the best position to remedy this lack of information, dismissal of the indictment was perhaps too harsh a sanction for the state's failure to do so.[5] Since we now have the benefit of that transcript, in order to save judicial time, we will consider whether Ms. Miller's credibility was sufficiently established.

In the *Taggard* case we stated:

"Where hearsay evidence has been introduced we must also determine whether the credibility of the informant has been sufficiently established so that the grand jury may know how much weight to give to the hearsay testimony." 500 P.2d at 243.

The *Taggard* case involved a conviction for the sale of narcotics. The indictment was based on the testimony of a police officer who told the grand jury where each of the alleged sales of narcotics occurred, the time of the sales, the amount of money that changed hands, and the quantity and type of drug involved in each transaction. The officer also described the relationship between the defendant and the informant and related details of conversation between the defendant and the informant. Neither the identity of the informant nor anything

"The appropriate sanction for a lower court to utilize when a witness is subpoenaed to appear for the taking of a deposition and fails to appear is the contempt power found in Civil Rule 45(f)." 520 P.2d at 74.

4. It is, of course, not the duty of the trial court to supply points and authorities for either side on a motion such as this. However, neither may a court accept one party's assertions as to the present state of the law simply because the opposing party fails to adequately respond to those assertions. The sanction of Civil Rule 77(f)(2) is a very severe one. It should be imposed with great caution by the trial court, and in no case should the court allow the existence of this power to replace or in any way minimize its

duty to exercise its independent judgment on all matters.

5. The inadequacy of the state's opposition is particularly irritating in the present case. Its failure in this respect, both in apparently not critically examining the only case cited by the opposition and in not providing the court with a tape or transcript of the grand jury proceedings, put the court in a difficult position. For the trial court to be expected to ·repair such defects on its own would be both damaging to the adversary process and unnecessarily wasteful of judicial time. However, in the present case, a more appropriate sanction against the offending party might have been a fine or censure. Alternatively, the court could have required the state to supplement its memorandum.

else about him was revealed. We found that the problem in the case was:

"the complete lack of evidence by which the grand jury could evaluate the trustworthiness of the hearsay informant's testimony. The grand jury was not presented with any evidence which would demonstrate the reliability of the particular informant or independently corroborate his story." 500 P.2d at 243.

In footnote 17, however, we stated that "it would have been sufficient to establish the informant's credibility if the police officer who testified before the grand jury had described informant's relationship with the police." 500 P.2d at 243. The informant in this case was "an Alaska State Trooper who served at various times as an undercover narcotics agent in Fairbanks." 500 P.2d at 243.

In the present case Glessner's grand jury testimony revealed that Ms. Miller was the store's security guard, and that she was a trained police officer. This is probably enough in itself to establish her credibility and reliability. In addition, Glessner's personal observation of Ms. Miller and Johnson with the unwrapped, tagged, unpaid for items outside the store was, in a sense, independent corroboration of Miller's story.

It was not improper to allow this hearsay testimony before the grand jury. The reason for Ms. Miller's absence was explained to the grand jury, and there was some assurance that she would be present at the trial of the case. In light of the necessity of Ms. Miller's absence on that day, the use of the hearsay was justifiable.

There is an additional basis from which we conclude that the indictment should not have been dismissed. The state's memorandum, although far from adequate, did assert that "there was sufficient evidence

before the grand jury because Mr. Glessner testified from personal knowledge and observation."

Despite its lack of adequate support or detail the state's memorandum in opposition did summarize one of the correct reasons why the court should have denied the motion to dismiss. Without reference to hearsay, the direct testimony of Glessner was sufficient to support the indictment. He testified that he saw Ms. Miller apprehend Johnson outside the store; that Johnson was in possession of items from the store to which price tags were still attached, indicating that the items had not been paid for;[6] that he observed Johnson take a can of mace from Ms. Miller, hit her in the face and attempt to escape; and that he apprehended Johnson while the latter sprayed him with mace and hit him with the mace can. Glessner had personal knowledge of the value of the items taken from the store.

Further, during oral argument on the motion to dismiss the indictment, the district attorney detailed Glessner's testimony, indicating that the direct observation was sufficient to support the charge.

We appreciate the frustration of a trial court which is given such meager assistance by counsel for both parties, but we do not believe that dismissal is the proper remedy. A sanction could have been imposed, or counsel could have been required to supplement the memorandum, without causing the state the delay and expense of securing a new indictment.

There was sufficient evidence presented to the grand jury to support the indictment.

The judgment is reversed and the case is remanded for further proceedings pursuant to the indictment.

Reversed and remanded.

---

6. The testimony indicated that the price tags were removed when payment was made for the items.