**STATE of Alaska, Appellant,**

v.

**Timothy Leroy GIEFFELS, Appellee.**

**No. 2846.**

Supreme Court of Alaska.

Aug. 27, 1976.

Avrum M. Gross, Atty. Gen., Juneau, Joseph D. Balfe, Dist. Atty., W. H. Hawley, Jr. and Ivan Lawner, Asst. Dist. Attys., Anchorage, for appellant.

Brian Shortell, Public Defender, Phillip P. Weidner, Asst. Public Defender, Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, ERWIN and BURKE, Justices.

## OPINION

ERWIN, Justice.

In this appeal we are presented with the question of whether the trial court properly dismissed the indictment brought against appellee Timothy Gieffels.[1]

On July 23, 1975, Gieffels was indicted for first degree murder and armed robbery. In a subsequent indictment dated August 23, 1975, Gieffels was charged on the alternative theory of felony murder. On February 2, 1976, the trial court dismissed both indictments due to prosecutorial omissions of exculpatory evidence regarding the calibre of the weapon with which the deceased was killed.[2] After this dismissal the trial court informed the State that it had 10 days to reindict.

Nine days later the State resubmitted an indictment against Gieffels. Testimony presented to the grand jury on February 11, 1976, disclosed that the accused was carrying a .38 calibre firearm in the Pines (an Anchorage bar) only hours before the deceased, a bartender at the Pines, was found dead in that establishment. Further, the cash register in the bar area was open and money was strewn about the counter. Additional evidence consisted of hair found at the scene of the shooting that might be Gieffels'; the fact that the defendant took flight to California shortly after the alleged homicide; and a suitcase of Gieffels' that was seized in California shortly after the shooting and contained certain items purportedly connecting the accused with the crime scene. The main non-hearsay evidence presented to the grand jury against the defendant was testimony of Larry Turner, who testified that Gieffels made statements on the night of the shooting to the effect that he was going to rob the Pines if he had to kill someone to do it so that he could obtain his child in Washington. The final witness called to testify before the grand jury

---

1. It is noted at the outset that Gieffels questions our right to review this matter. AS 22.05.010(a) provides in pertinent part:

    . . . An appeal to the supreme court is a matter of right, except that the state shall have no right of appeal in criminal cases, except to test the sufficiency of the indictment . . . .

Because Gieffels questions the legal sufficiency of the evidentiary basis for the indictment, this court has jurisdiction over the appeal. *See also State v. Johnson,* 525 P.2d 532, 533–34 (Alaska 1974).

2. Gieffels was alleged to carry a .38; the victim was shot with a .44.

was Investigator Clemens, an Anchorage police officer.

In reviewing the record we note that Clemens' testimony contains a substantial amount of hearsay. Specifically, he related the purported statements of eight witnesses: (1) statements by Sergeant Ybarrando, a San Diego policeman, to the effect that the defendant was avoiding arrest in California; (2) statements made by the defendant's brother, a San Diego resident, to Sergeant Stout, a California police officer, to the effect that Gieffels had indicated that he had in fact been involved in a homicide; (3) statements by Jinx Jodges, a resident of California, corroborating Larry Turner's testimony as to incriminating comments made by Gieffels the night of the alleged homicide; (4) statements made by Officer Ellis of the Benicia, California, Police Department to Sergeant Stout, relating an admission by the defendant to Ellis which would indicate his involvement in the shooting; (5) statements made to Investigator Thomas, an Alaska State Trooper stationed in Washington, by a defense investigator to the effect that the latter had turned over the "murder weapon," (i.e. an implied admission by the defendant); (6) a statement by a bail bondsman in Washington to Sergeant Thomas that Gieffels had remarked that the shooting occurred outside the Pines in a fight; (7) statements by Captain Mark Hogan of the Anchorage Police Department with regard to transportation of the suitcase from California to Alaska; and (8) statements made by the owner of the Pines indicating that certain money in the custody of the deceased on the night of the shooting was subsequently missing.

Before or after each absent witness' testimony was presented, the justification for the use of hearsay was stated on the record by the district attorney. The expense of transporting the absent witnesses, all of whom were outside the state, was advanced as the reason for using hearsay before the grand jury.

After being presented with the foregoing evidence, the grand jury returned a true bill against Gieffels to the charge of first degree murder based on the theory of felony murder.

A timely motion to dismiss the indictment was subsequently filed by the defendant; and on March 15, 1976, the trial court granted the motion on the grounds that the State had not shown compelling justification for utilizing the hearsay testimony and, in addition, had not demonstrated the reliability of the hearsay declarants. The State thereupon filed this appeal.[3]

The case at bar concerns the interpretation of Criminal Rule 6(r), which provides:

> Evidence which would be legally admissible at trial shall be admissible before the grand jury. In appropriate cases, however, witnesses may be presented to summarize admissible evidence if the admissible evidence will be available at trial. Hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction. If hearsay evidence is presented to the grand jury, the reasons for its use shall be stated on the record.

The issue is whether the expense of producing absent witnesses is a "compelling justification" for the use of hearsay testimony before the grand jury.

In *Burkholder v. State*,[4] a case decided prior to the enactment of Criminal Rule 6(r), this court had the opportunity to deal with the issue of hearsay before the grand

---

3. In *McKinnon v. State*, 526 P.2d 18, 27 (Alaska 1974), and *Webb v. State*, 527 P.2d 35, 36 (Alaska 1974), we held that where there was other evidence which would justify a true bill, the mere use of hearsay evidence in violation of Criminal Rule 6(r) would not vitiate the indictment. In the instant case

the trial court determined that the hearsay evidence at issue was not cumulative of other evidence presented but was in fact essential to the indictment.

4. 491 P.2d 754 (Alaska 1971).

jury. In ruling that the indictment must be dismissed, we stated in *Burkholder* that the ABA Standards [5] regarding the prosecutor's role before the grand jury "appear appropriate." [6] The pertinent standard, § 3.6(a), provides that

A prosecutor should present to the grand jury only evidence which he believes would be admissible at trial. However, in appropriate cases the prosecutor may present witnesses to summarize admissible evidence available to him which he believes he will be able to present at trial.[7]

In addition, we set forth the commentary dealing with standard 3.6(a), noting that it "seems persuasive." [8] The commentary referred to provides that:

As a general principle, the use of secondary evidence before a grand jury should be avoided unless there are cogent reasons justifying the presentation of a matter on the basis of such evidence. On the other hand, some jurisdictions allow an indictment to rest on evidence which would not be admissible at trial, e. g., *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 [1956]. The need to use a summary of available evidence may arise in cases involving voluminous records or where an absent witness has given a written statement but is not available at the time and circumstances justify prompt grand jury action. Similarly, where the victim of a criminal act is seriously injured and therefore is unavailable, someone to whom the relevant facts have been related should be permitted to relate to the grand jury what has been told. A third illustrative situation exists where the safety of an important witness reasonably warrants that his identity remains covert and his statements have been recorded and can be presented to the grand jury in sufficient detail to warrant an indictment.[9]

In a subsequent opinion, *Taggard v. State*,[10] we specifically approved of § 3.6(a) of the American Bar Association's Standards Relating to the Prosecution Function, and once again set forth the commentary in a footnote.

After the decision in *Taggard*, Criminal Rule 6(r) went on to provide that sentences in the rule were derived from § 3.6(a) of the ABA Standards. However, rule 6(r) went on to provide that

[h]earsay evidence shall not be presented to the grand jury absent *compelling justification* for its introduction. (Emphasis added)

*State v. Johnson* [11] was the first case in which this court dealt with the question of what constitutes compelling justification for the introduction of hearsay testimony to the grand jury. In that case Johnson was charged with grand larceny. The only witness that testified before the grand jury was an employee of the store where the alleged crime had occurred. Although he had not actually seen Johnson take any items, the store employee had participated in Johnson's apprehension. It was apparently the intention of the State to call an additional witness—the store security guard who allegedly saw Johnson remove goods from the store. However, the security guard was not present when the grand jury met because she had left the state two days earlier to be with her dying father. As a consequence, the employee who did testify not only described to the grand jury what he saw, but also testified as to statements made to him by the security guard regarding the incident.

5. A.B.A. Project on Standards Relating to the Prosecution Function and the Defense Function (Approved Draft, 1971).

6. 491 P.2d at 758 n. 14 (Alaska 1971).

7. A.B.A. Project on Standards Relating to the Prosecution Function and the Defense Function, at 88 (Approved Draft, 1971).

8. 491 P.2d at 758 n. 14 (Alaska 1971).

9. A.B.A. Project on Standards Relating to the Prosecution Function and the Defense Function, at 89 (Approved Draft, 1971).

10. 500 P.2d 238, 242 n. 14 (Alaska 1972).

11. 525 P.2d 532 (Alaska 1974).

Johnson subsequently filed a motion to dismiss the indictment on the ground that the evidence presented to the grand jury was insufficient. The trial judge granted the motion and the State appealed. In reversing the trial court we noted that:

It was not improper to allow this hearsay testimony before the grand jury. The reason for [the security guard's] absence was explained to the grand jury, and there was some assurance that she would be present at the trial of the case. In light of the necessity of [the security guard's] absence on that day, the use of the hearsay was justifiable.[12]

In a subsequent opinion[13] we characterized the *Johnson* case as involving an "unavoidably absent hearsay declarant."

This court again reached the issue of what constitutes a compelling justification for the use of hearsay testimony at grand jury in *Galauska v. State*.[14] The facts disclose that in that case Galauska and a man named Roger Peter were charged with murdering a third man. When the indictment was sought against Galauska and Peter, the prosecutor stated that he intended to present a written statement made by Peter. As noted in the opinion, the prosecutor

chose not to bring Peter before the grand jury because that could prejudice his constitutional rights. However, he advised the grand jury in the event it wished that Peter be presented, he would request the public defender to allow Peter to make a statement to the grand jury.[15]

In response to Galauska's contention that the State failed to present compelling rea-

sons for introducing Peter's hearsay testimony, we observed that:

Calling Peter before the grand jury would have led to the introduction of direct evidence only if Peter incriminated himself. Concern for Peter's substantive rights constituted a compelling reason under Criminal Rule 6(r) for the use of his hearsay statement at the grand jury.[16]

With the foregoing in mind we proceed in our review of the case at bar. As noted, Officer Clemens testified for eight absent witnesses, relating the most damaging evidence against Gieffels by means of hearsay. Each of the absent witnesses was out of state when the grand jury met, and the sole reason they were not called was the fact that the State wished to avoid the expense of transporting them to and from Alaska. The State submits that this constitutes compelling justification for the use of hearsay testimony.

■ As this court has previously observed, "hearsay evidence has probative force."[17] Indeed, as Judge Hand stated in *United States v. Costello,*[18]

[W]e conduct our most serious affairs upon the strength of it [hearsay]; it would be impossible to carry on a day's business without it.

Because of this fact we have determined that the use of hearsay before the grand jury is proper. It was, nevertheless, understood when Criminal Rule 6(r) was enacted that if the grand jury was to carry out the vital function of protection of the innocent against oppression and unjust prosecution, the use of hearsay would only be allowed in certain circumstances; specifically, where there was a *compelling* reason for its use. For purposes of interpreting Criminal Rule 6(r) we equate com-

---

12. *Id.* at 536.

13. *McKinnon v. State*, 526 P.2d 18, 27 (Alaska 1974).

14. 527 P.2d 459 (Alaska 1974).

15. *Id.* at 465.

16. *Id.*

17. *State v. Parks*, 437 P.2d 642, 644 (Alaska 1968).

18. 221 F.2d 668, 678 (2d Cir. 1955).

pelling with necessity. In our view this position is consistent with the commentary to the ABA Standard 3.6(a), which we have referred to in the past, as well as our decision in *Johnson*. Specifically, we refer to the commentary which provides that:

> The need to use a summary of available evidence may arise in cases . . . where an absent witness has given a written statement but is *not available at the time and circumstances justify prompt grand jury action*. (Emphasis added) [19]

Also, our language in *Johnson* states that the use of hearsay was justifiable in light of "the *necessity* of [the witnesses'] absence on that day." [20]

The evidence in the instant case does not indicate that it was "necessary" for the prosecutor to use hearsay testimony, for the expense of transporting one, or possibly more, of the key witnesses would not impose a financial burden of any serious magnitude to the State.[21]

■ A number of witnesses to crimes in this state may travel or reside outside Alaska, and in many instances, for a variety of reasons, it may be necessary to summarize their testimony by means of hearsay before the grand jury; however, the mere expense of transportation for the absent witnesses is not a reason which we feel makes it necessary to use hearsay.[22]

■ In restricting the type of testimony which may be introduced to the grand jury, it is not our intention to turn this stage of the proceedings into a mini-trial. However, the rationale for limiting hearsay testimony appears evident; before the accused suffers any of the grave inconveniences which are apt to ensue upon the return of a felony indictment, there should be a reliable determination made as to the probability of his guilt. This can best be guaranteed when witnesses against the accused appear in person before the grand jury so that the panel can view their demeanor and subject them to cross-examination. In our view hearsay evidence, if unchecked, would erode the protective value of the grand jury so as to make it nothing more than an administrative arm of the district attorney's office.[23] If the grand jury indictment process is to fulfill its intended functions, this must not be allowed to happen.[24]

AFFIRMED.

19. A.B.A. Project on Standards Relating to the Prosecution Function and the Defense Function, at 89 (Approved Draft, 1971).

20. 525 P.2d 532, 536 (Alaska 1974).

21. Furthermore, the State made no showing that the witnesses in question could not attend the proceedings for some reason. Thus, the case at bar is distinguishable from *State v. Johnson*, 525 P.2d 532 (Alaska 1974), where the witness was unavailable because she was with her dying father.

22. This position is not inconsistent with the view expressed in *McKinnon v. State*, 526 P.2d 18, 27 (Alaska 1974), wherein we stated that "There is little a technician's physical presence at a grand jury proceeding could add to a laboratory report . . . ." That decision merely stands for the proposition that where a professional submits a technical report and his testimony would simply affirm that report, it is proper to introduce the evidence by hearsay testimony since the presumed inconvenience is a compelling reason for such evidence.

23. In a recent opinion, *Coleman v. State*, 553 P.2d 40 (Alaska 1976), we expressed the view that "There is evidence that the grand jury indictment process may no longer be fulfilling its intended functions, and recommendations have been made that it should be replaced by the preliminary hearing procedure."

24. In order to expedite the trial of this case, we previously entered an order stating:
> IT IS ORDERED that the State of Alaska may re-present this case to a grand jury for reindictment without mooting the issues presented in this appeal.

We note that Gieffels was re-indicted and has been convicted of manslaughter by a jury trial at the time of the publication of this opinion.

BOOCHEVER, Chief Justice, concurs.

BOOCHEVER, Chief Justice (concurring).

Criminal Rule 6(r) provides in appropriate cases for the summarization of admissable evidence if that evidence will be available at trial. The rule states, however, that "[h]earsay evidence shall not be presented to the grand jury absent compelling justification for its introduction".

I have difficulty with the portion of the opinion which equates the term "compelling" with "necessity" as far as the use of hearsay is concerned. The term "necessity" implies that if any means at all can be used whereby the testimony is produced by a live witness, hearsay may not be utilized. Certainly, there was no necessity for summarizing the technician's testimony in *McKinnon v. State,* 526 P.2d 18, 27 (Alaska 1974), although I believe there was compelling reason not to require the presence of the witness. I would equate the term "compelling" as used in the rule as meaning "substantial". As in so many other judicial decisions, I believe that the best result could be obtained here by a balancing test. Thus the importance of the particular testimony involved would be balanced against the expense and inconvenience involved in obtaining the testimony. The more important the testimony and the more vital it is to the determination to be made by the grand jury, the stronger the reason for the use of the hearsay must be. In the present case, it would seem to me that at least one of the witnesses who obtained admissions from Gieffels should have been present to testify in person. Expense, however, should be a factor to be considered, and the state should not be required to transport distant witnesses to Alaska when their testimony is cumulative or pertaining to peripheral matters. Such testimony should be capable of being summarized as specified in Criminal Rule 6(r). Possibly the majority opinion is intended to give that much leeway in the use of hearsay, but I am filing this separate concurrence to indicate my views.