John LOFQUIST, Appellant,

v.

STATE of Alaska, Appellee.

No. 6030.

Court of Appeals of Alaska.

Jan. 21, 1983.

Christine Schleuss, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

This case arises out of a series of drug-related arrests in Kodiak. On November 28, 1980, John Sherwood and David Glad were arrested and charged with selling cocaine. Sherwood and Glad were associates of Michael Balthazar, who was the focus of an on-going narcotics investigation. Sherwood and Glad were also acquainted with Lofquist, who was a friend and former roommate of Balthazar. After his arrest, Glad agreed to assist the police in their investigation by purchasing cocaine from Balthazar. The next day, on November 29, 1980, Glad was taken to Balthazar's residence where he purchased approximately two grams of cocaine from Balthazar. Shortly after this transaction Balthazar was arrested.

Later that evening, at approximately 9:00 p.m., Glad was visiting Sherwood when Sherwood received a telephone call from Lofquist. Lofquist asked Sherwood if he had heard what had happened to Balthazar and stated that he thought Balthazar had been "set up."

On November 30, at approximately 8:00 p.m., Lofquist called Sherwood and asked Sherwood for $500 that Sherwood owed him. He stated that he needed the money to get Balthazar out of jail. During the conversation he told Sherwood that when he found out who had set Balthazar up he would kill them.

On December 1 at approximately 9:00 a.m., Lofquist called Sherwood for the third time. He stated that he had figured out that Sherwood's "little friend with the beard" (referring to Glad) had set up Balthazar. When Lofquist asked Sherwood for the name of the friend with the beard, Sherwood gave him the name of "Brad VanDenter," another associate of Sherwood's. Lofquist told Sherwood that "they would look him up."

Based on the three telephone calls which he had made to Sherwood, a proposed indictment against Lofquist for interference with an official proceeding, in violation of AS 11.56.510(a)(1)(A),[1] was presented to the grand jury in the middle of December, 1980. Sherwood did not testify at the grand jury proceedings because he was undergoing drug rehabilitation in San Diego, California. Special Agent Ruble of the Coast Guard Intelligence unit testified that he spoke to the director of the drug rehabilitation center and to two of the director's representatives, who informed him that it would be inadvisable and "detrimental to the program" to take Sherwood out of the drug rehabilitation center to testify before the grand jury. No affidavits of the director or his representatives were presented.

In lieu of Sherwood's live testimony, the district attorney read a sworn statement

---

1. AS 11.56.510(a)(1)(A) provides:

   *Interference with official proceedings.*
   (a) A person commits the crime of interference with official proceedings if he

   (1) uses force on anyone, damages the property of anyone, or threatens anyone with intent to
   (A) improperly influence a witness or otherwise influence the testimony of a witness. . . .

made by Sherwood which outlined the November 30th and December 1st calls. In addition, Special Agent Ruble and a Kodiak police officer gave hearsay testimony concerning the telephone calls. After this testimony, Lofquist was indicted.

Prior to trial, Lofquist moved to dismiss the indictment; the motion was denied. Lofquist was subsequently convicted by a jury and received a three-year suspended imposition of sentence. This appeal followed.

Lofquist challenges the validity of the indictment. He contends that it must be dismissed because Sherwood's written statement was hearsay and there was no compelling reason for its use. He also asserts that the credibility of Sherwood, the hearsay declarant, was not established. The state concedes that if Sherwood's hearsay statement was improperly presented to the grand jury, the other evidence was insufficient to support the indictment. However, it argues that Sherwood's hospitalization in California for drug rehabilitation treatment constituted a compelling justification for the use of the written statement before the grand jury.

Rule 6(r) of the Alaska Rules of Criminal Procedure governs the admissibility of evidence before the grand jury. The rule provides:

*Admissibility of Evidence.* Evidence which would be legally admissible at trial shall be admissible before the grand jury. In appropriate cases, however, witnesses may be presented to summarize admissible evidence if the admissible evidence will be available at trial. *Hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction. If hearsay evidence is presented to the grand jury, the reasons for its use shall be stated on the record.* [Emphasis supplied.]

In *State v. Gieffels*, 554 P.2d 460, 463–65 (Alaska 1976), the Alaska Supreme Court equated "compelling justification" with "necessity" and held that the mere expense of transporting the absent declarant to the grand jury proceeding did not constitute a compelling reason to use hearsay. Compelling justification has been found, however, in cases where a witness is absent because she is visiting her dying father [2] and where there was concern for the absent witness' constitutional rights.[3]

■ We recognize that participation in a residential drug treatment program may constitute compelling justification for the use of hearsay under some circumstances. For example, it may not be wise to remove a patient from a program if he is undergoing physical withdrawal or if he is at a stage where contact with the outside world might seriously jeopardize his rehabilitation. However, the mere fact that a person is in a drug treatment program is insufficient to constitute compelling justification.

In this case, the only evidence regarding Sherwood's absence was the following testimony of Special Agent Ruble:

[Ruble] On the 11th of December I called San Diego and talked with the drug rehab program director, Captain Taylor and . . . two of his representatives, about getting John Sherwood up here and they requested that we not try to pull him out at this time being the condition he was in when he did arrive there, he was, you know, a heavy user of narcotics prior to going. . . .

[D.A.] And they felt it was inadvisable to bring Mr. Sherwood here.

[Ruble] Right. . .

[D.A.] All right.

[Ruble] . . . said it would be detrimental to the program.

There was no description of the type of program Sherwood was in. There were no sworn statements by the director or staff of the drug rehabilitation program which explained why it would be inadvisable for Sherwood to appear before the grand jury or why it would be detrimental to his treatment. No indication was given as to

2. *State v. Johnson*, 525 P.2d 532 (Alaska 1974).

3. *Galauska v. State*, 527 P.2d 459, 465 (Alaska 1974).

whether the inadvisability of Sherwood's appearance was simply a matter of convenience or whether it was deemed to be of significant importance to his rehabilitation. Indeed, the record's reference to the fact that Sherwood's appearance would be detrimental to "the program" makes it ambiguous whether Sherwood's absence was desired for his own benefit or merely for the convenience of persons administering the rehabilitation program. Under these circumstances we conclude that the state did not produce sufficient evidence at the time of Lofquist's indictment to show that Sherwood's absence was a necessity. Criminal Rule 6(r) affirmatively required the state to establish, on the record of the grand jury proceeding, a compelling need to use hearsay evidence. Therefore this rule precluded the use of Sherwood's hearsay statement at the grand jury.

A separate basis for precluding the challenged hearsay testimony merits consideration in this case. In *Taggard v. State,* 500 P.2d 238, 242–43 (Alaska 1972), the Alaska Supreme Court established a two-prong test for the use of hearsay evidence before a grand jury: (1) the evidence must present a sufficiently detailed account of the defendant's criminal activity, and (2) the hearsay declarant must be reliable. The first prong of the test is not at issue here; the second, however, is.

In *Taggard,* the court dismissed an indictment because the grand jury was not presented with any evidence to establish the reliability of an unnamed hearsay informant. It determined that the prosecutor's unsupported assertion that the information was reliable and a police officer's statement that the informant's hearsay testimony had been used in other cases before the same grand jury was inadequate to demonstrate the trustworthiness of the informant. *Id.* at 243. In *McKinnon v. State,* 526 P.2d 18 (Alaska 1974), the court discussed the type of evidence of credibility required by *Taggard.* In *McKinnon* the prosecutor presented a lab report to the grand jury, but the technician who prepared the report was not present. The court, in discussing the technician's credibility, stated:

> [W]e believe that the credibility of the author of the laboratory report and the report itself was adequately established by the fact that the author was a technician at Alaska Medical Laboratories. The author's professional and objective position, of which the grand jury was aware, warranted the use of the laboratory analysis at the grand jury hearing. A professional laboratory technician has no motive to prevaricate, and he is presumptively qualified to perform chemical analysis in a competent manner. We also note that there is little a technician's physical presence at a grand jury proceeding could add to a laboratory report; the technician could do no more than affirm that he did perform the test reported, and that those tests did indicate the presence of a narcotic substance. Vigorous cross-examination regarding the competence of the expert or the reliability of the test can hardly be expected in grand jury proceedings.

526 P.2d at 27–28 (footnote omitted). *See also State v. Johnson,* 525 P.2d 532, 536 (Alaska 1974); *Taggard v. State,* 500 P.2d at 243 n. 17.

■ Unlike the lab technician in *McKinnon,* Sherwood had no professional status which would establish his reliability. Moreover, since Sherwood himself had just been arrested on drug charges, he may well have had some motive to prevaricate. Had he been physically present at the grand jury proceeding, the grand jurors would have been able to observe his demeanor and question him in order to satisfy themselves as to his credibility. However, given Sherwood's absence and the prosecution's failure to present any evidence of his trustworthiness, the grand jury was left with no basis whatsoever for evaluating the hearsay testimony which it heard. We thus conclude that there was no evidence presented sufficient to establish Sherwood's reliability.

■ Since Sherwood's statements were inadmissible hearsay which should not have been presented to the grand jury, and since the state has conceded that without Sher-

wood's statement the indictment fails, Lofquist's conviction must be reversed.

The conviction is REVERSED and the case is REMANDED with directions to dismiss the indictment.[4]

4. Lofquist also argues that during *voir dire* the prosecutor made an improper comment on his failure to testify. It is unnecessary to consider this issue given the fact that we reverse and dismiss the indictment.