Neil CAMERON, Petitioner,

v.

STATE of Alaska, Respondent.

No. S–11975.

Supreme Court of Alaska.

Nov. 30, 2007.

**24.** 85 Ohio St.3d 28, 706 N.E.2d 778, 782–83 (1999).

Wayne Anthony Ross, Ross & Miner, P.C., Anchorage, for Petitioner.

Kenneth J. Diemer, Kenneth M. Rosenstein Assistant Attorneys General, Anchorage, and David W. Márquez, Attorney General, Juneau, for Respondent.

Before: FABE, Chief Justice, MATTHEWS, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Neil Cameron, who was accused of committing a felony, asked the district attorney's office to inform the grand jury that he wished to testify before it. The prosecutor in charge of Cameron's case declined to do so and Cameron was indicted. The superior court dismissed the indictment but the court of appeals reinstated it. We are now asked to decide if a prosecutor, who has been informed of a potential defendant's desire to testify before the grand jury, must inform the grand jury of that request. We conclude that the Alaska Rules of Criminal Procedure require a prosecutor to inform the grand jury of the accused's request to testify. We therefore reverse the court of appeals's decision and vacate Cameron's indictment.

## II. FACTS AND PROCEEDINGS

### A. Facts

Shortly before midnight on October 15, 2003, two tow truck operators attempted to repossess Cameron's Chevy Suburban, which was parked in front of his home in Anchorage. Cameron appears to have known that his vehicle could be repossessed, but was not notified that repossession was imminent. As the tow truck operators positioned their tow truck behind Cameron's vehicle, Cameron awoke. Seeing two unknown individuals acting suspiciously near his vehicle, he armed himself with a rifle and stepped onto his front porch. From the porch Cameron pointed the rifle at the tow truck operators and informed them that they "had three sec-onds to get out of his yard." The operators retreated to their tow truck and drove away.

In late October 2003 Cameron was charged by information with two counts of third-degree assault, a felony.[1] On November 10, 2003, Cameron's attorney sent a letter to the assistant district attorney requesting that Cameron be afforded "the opportunity to appear and testify before" the grand jury. The letter explained that Cameron's actions represented an "attempt[ ] to prevent a nighttime trespass on his property and what appeared to be a theft of his vehicle." The district attorney's office did not respond to this letter.

### B. Proceedings

On December 8, 2003, the prosecutor presented the case against Cameron to the grand jury. The prosecutor presented testimony from both tow truck operators and the investigating police officer. At no point during the grand jury proceedings did the prosecutor call Cameron as a witness or inform the grand jury of Cameron's request to testify. During the grand jury proceedings, grand jurors asked the prosecutor several questions that showed their interest in Cameron's state of mind. One grand juror asked a question about the legal consequences of Cameron being in fear when he exited his home. Another asked the prosecutor if one of the witnesses could testify as to whether Cameron had been able to identify the repossessors' truck as a tow truck. The prosecutor stated that he would direct the witnesses not to "speculate into the defendant's mind set." The grand jury indicted Cameron.

Cameron moved to dismiss the indictment in the superior court. He argued that the prosecutor improperly failed to inform the grand jury that he requested to appear before it. Cameron asserted that he "should have been allowed to testify about his fear, and why he armed himself before confronting the apparent car thieves." Superior Court Judge Michael L. Wolverton granted Cameron's motion, concluding that Alaska Rule of Criminal Procedure (Criminal Rule) 6(p) and

---

1. AS 11.41.220(a)(1)(A).

*Webb v. State*[2] required the prosecutor to inform the grand jury of an accused's desire to appear before it.

The state appealed, arguing that neither *Webb* nor the Criminal Rules required a prosecutor to inform the grand jury of an accused's request to testify. In a published opinion, the court of appeals agreed with the state and reinstated Cameron's indictment.[3] In so doing, the court held that the prosecutor did not have a duty under Criminal Rule 6(q) to present Cameron's proposed testimony because the testimony was not exculpatory. The court reasoned that requiring the presentation of evidence about the accused's state of mind would require the grand jury to weigh "competing inferences" and to "assess the personal credibility of the witnesses who testified about [an] encounter." Asking the grand jury to make these determinations, the court explained, would distort the grand jury process and possibly turn grand jury proceedings into "mini-trials." The court of appeals concluded that testimony relating to an accused's state of mind was "not the type of exculpatory evidence whose presentation is required by Criminal Rule 6(q)."

We granted Cameron's petition for hearing of the court of appeals's decision in order to address whether a prosecutor has a duty under the Criminal Rules to inform the grand jury of an accused's request to testify.

## III. STANDARD OF REVIEW

▆▆▆ Whether the trial court applied the correct legal rule is a question of law that we review *de novo* using our independent judgment.[4] When reviewing questions of law we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[5]

## IV. DISCUSSION

### A. Grand Jury Proceedings in Alaska

▆▆▆ In Alaska felony charges must be initiated by grand jury indictment unless the defendant waives indictment.[6] This requirement ensures that a group of citizens will make an independent determination about the probability of the accused's guilt "before the accused suffers any of the grave inconveniences which are apt to ensue upon the return of a felony indictment."[7] The grand jury's decision whether to indict requires that it act as both a shield and sword of justice.[8] On the one hand, the grand jury acts as an investigatory and accusatory body, tasked with determining whether criminal proceedings against the accused should be instituted.[9] On the other hand, the grand jury plays a protective role by " 'operat[ing] to control abuses by the government and protect[ing] the interests of the accused.' "[10] We have previously noted that the "protection of the innocent against oppression and unjust prosecution" ranks among the grand jury's "vital function[s]."[11] This case focuses primarily on the grand jury's protective function.

▆▆▆ Grand jury proceedings are fairly straightforward. A prosecutor prepares an

**2.** 580 P.2d 295 (Alaska 1978).

**3.** *State v. Cameron*, 113 P.3d 687, 691 (Alaska App.2005).

**4.** *James v. State*, 84 P.3d 404, 406 (Alaska 2004) (quoting *Martin v. Martin*, 52 P.3d 724, 726 (Alaska 2002)).

**5.** *Alderman v. Iditarod Props., Inc.*, 32 P.3d 373, 380 (Alaska 2001) (citing *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**6.** Alaska Const. art. I, § 8 ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury ...."); *see also* AS 12.80.020; Criminal Rule 7(a) (felony offenses "shall be prosecuted by indictment, unless indictment is waived").

**7.** *State v. Gieffels*, 554 P.2d 460, 465 (Alaska 1976).

**8.** *Preston v. State*, 615 P.2d 594, 602 (Alaska 1980).

**9.** *United States v. Calandra*, 414 U.S. 338, 343–44, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

**10.** *Preston*, 615 P.2d at 602 (quoting *Coleman v. State*, 553 P.2d 40, 47 (Alaska 1976); *accord Calandra*, 414 U.S. at 343, 94 S.Ct. 613 (grand jury responsible for "the protection of citizens against unfounded criminal prosecutions")).

**11.** *Frink v. State*, 597 P.2d 154, 165 (Alaska 1979) (quoting *Gieffels*, 554 P.2d at 464).

indictment and presents evidence in support of the indictment to the grand jury through witnesses the prosecutor examines.[12] During the grand jury proceedings, the prosecutor "act[s] as the grand jury's legal advisor," advising it of the applicable law and answering legal questions that the grand jurors have.[13] The grand jury itself may question witnesses and may request that additional witnesses be brought before it.[14] The grand jury is instructed to issue an indictment when "all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant." [15]

The Criminal Rules contain several provisions designed to strengthen the grand jury's protective function. Criminal Rule 6(p) [16] permits grand juries to review evidence favoring the accused, although it does not require them to do so. When the jury is aware of evidence that "will explain away the charge," Criminal Rule 6(q) states that the grand jury "shall order such evidence to be produced and for that purpose may require the prosecuting attorney to subpoena witnesses." Moreover, the Criminal Rules have restricted the admissibility of hearsay evidence in grand jury proceedings in order to promote the reliability of the evidence that the grand jury may consider.[17]

Our interpretation of the Criminal Rules has further strengthened the grand jury's protective role. Because the prosecutor "should seek justice, not simply indictment or conviction," we held in *Frink* that Criminal Rule 6(q) requires the prosecutor to present exculpatory evidence to the grand jury.[18] We explained that if the prosecutor were not required to present exculpatory evidence, the grand jury "probably w[ould] not hear such evidence" [19] because "[t]he grand jury cannot be expected to call for evidence of which it is kept ignorant." [20]

In sum, both the Criminal Rules and this court have taken special care to preserve the grand jury's ability to "ensur[e] fair and effective law enforcement." [21] This attention to the grand jury's protective role helps prevent the grand jury from becoming a mere "rubber stamp" for the prosecutor [22] or an "administrative arm of the district attorney's office." [23] With this background in mind, we turn to Cameron's claims.

### B. Under the Criminal Rules the Prosecutor Had a Duty To Inform the Grand Jury of Cameron's Request To Testify.

■ Relying on Criminal Rule 6(p) and this court's decision in *Webb v. State*,[24] the superior court concluded that the prosecutor

12. Criminal Rule 6(I).

13. *Coleman*, 553 P.2d at 47–48 (Alaska 1976). *See also* Criminal Justice Standards Comm., American Bar Ass'n, ABA Standards for Criminal Justice·Prosecution and Defense Function, 3–3.5(a) at 63 (3d ed. 1993) ("Where the prosecutor is authorized to act as legal adviser to the grand jury, the prosecutor may appropriately explain the law and express an opinion on the legal significance of the evidence but should give due deference to its status as an independent legal body.").

14. Criminal Rule 6(p), 6(q).

15. Criminal Rule 6(q).

16. Criminal Rule 6(p) provides: "Although the grand jury has no duty to hear evidence on the behalf of the defendant, it may do so."

17. Criminal Rule 6(r) provides in relevant part: "Except [for three limited exceptions], hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction."

18. *Frink*, 597 P.2d at 164–65.

19. *Id.* at 165.

20. *Id.* (quoting *Johnson v. Superior Court*, 15 Cal.3d 248, 251, 124 Cal.Rptr. 32, 539 P.2d 792 (1975)).

21. *See United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

22. *See United States v. Al Mudarris*, 695 F.2d 1182, 1188 (9th Cir.1983).

23. *State v. Gieffels*, 554 P.2d 460, 465 (Alaska 1976). *But see* Editorial, *Do We Need Grand Juries?*, N.Y. Times, Feb. 18, 1985 at A16 (quoting Chief Judge Sol Wachtler of New York Court of Appeals as stating that district attorney has so much influence over grand jury that district attorney could convince grand jury to "indict a ham sandwich").

24. 580 P.2d 295 (Alaska 1978).

had a duty to inform the grand jury of Cameron's request to testify. The court of appeals held that the Criminal Rules did not recognize such a duty.[25] In his briefing, Cameron suggests that policy considerations justify the recognition of a duty to disclose an accused's request to testify. The state argues that no such duty exists because Criminal Rules 6(I) and 6(p) do not explicitly require the prosecutor to inform the grand jury of the accused's request to testify.

The issue whether the Criminal Rules recognize a duty to inform the jury of an accused's request to testify is an issue of first impression for this court. For the reasons explained below, we conclude that the Criminal Rules require the prosecutor to inform the grand jury of an accused's request to testify.

Under Criminal Rule 6(I) [26] the prosecutor acts as the grand jury's legal advisor, informing the grand jury of the legal standards applicable to the case before it and answering legal questions that the grand jury may have. As we noted in *Coleman v. State*,[27] a well-informed prosecutor "is in a position to furnish guidance to the grand jury on the law and the weight of the evidence and should be free to do so whether this leads to a determination to indict or not to indict." [28] Importantly, because grand jury proceedings are not adversarial and are not conducted before a judge, the prosecutor is the grand jury's *sole* legal advisor.[29] Thus, the prosecutor, and only the prosecutor, is both in a position to remind the grand jury of the extent of its investigatory powers and has a mandate to do so.

The transcript of the grand jury proceedings convinces us that the prosecutor did not adequately fulfill his advisory role. The grand jurors' questions to the prosecutor and to the witnesses evinced a strong desire to hear testimony from Cameron about his state of mind. One grand juror asked a witness, "[s]o [Cameron] had no idea if you were trying to steal [the vehicle] . . . you just went and started to take the vehicle?" Another juror asked the prosecutor "what if [Cameron] felt like he was in fear?" Finally, a grand juror asked the prosecutor whether a witness could be recalled to testify as to whether Cameron was able to identify the repossessors' truck as being a tow truck. That the prosecutor recognized that these questions involved Cameron's state of mind is evidenced by his explanation that witnesses "can't speculate into what Mr. Cameron was thinking" and his decision to provide the grand jury with the legal requirements for self defense, which focuses on the reasonableness of the accused's belief that the use of deadly force was necessary.[30] The grand jurors' questions clearly evinced substantial interest in hearing testimony from Cameron about his state of mind. Further, in light of the fact that Cameron's attorney had clearly and unconditionally requested that "Mr. Cameron [have] the opportunity to appear and testify before [the grand jury]," the prosecutor knew that Cameron would testify if called as a witness.

---

**25.** The court of appeals also held that the superior court's reliance on *Webb* was misplaced. We agree. The accused in that case, Webb, requested that the prosecutor inform the grand jury that he wished to testify. *Id.* at 299. Because the prosecutor did inform the grand jury of Webb's request to testify and of its power to call Webb as a witness, the issue of whether the prosecutor had a duty to disclose Webb's request was not before the court. *Id.*

**26.** Criminal Rule 6(i) provides: "The prosecuting attorney shall prepare all indictments and presentments for the grand jury, and shall attend their sittings to advise them of their duties and to examine witnesses in their presence."

**27.** 553 P.2d 40 (Alaska 1976) (quoting ABA PROJECT ON STANDARDS RELATING TO THE PROSECUTION FUNC-

TION AND THE DEFENSE FUNCTION, § 3.5 at 87 (Approved Draft 1971)).

**28.** *Id.* at 48.

**29.** Criminal Rule 6(e)(2) requires the court to "charge the jury with written instructions, which the court deems proper, concerning the powers and duties of the grand jury." But the court's instructions are general, not case-specific, and occur only once, at the beginning of the grand jury's term; *see* Criminal Rule 6(e)(2). And as the record in this case demonstrates, grand jurors may not remember their powers and duties during the actual grand jury proceedings.

**30.** AS 11.81.335.

The prosecutor should have informed the grand jury of Cameron's request to testify. As the grand jury's advisor, the prosecutor should have reminded the grand jury that they had the power under Criminal Rule 6(p) to "hear evidence on the behalf of a defendant" and that the accused had offered to provide just such evidence. The grand jury's power to hear evidence on behalf of the accused allows the grand jury to fulfill a more active investigatory role, which, in turn, helps ensure a more informed grand jury that is better able to fulfill its protective function.[31] In order to fulfill his duties under Criminal Rule 6(I) and to give effect to Criminal Rule 6(p), the prosecutor should have informed the grand jury that Cameron was willing to testify and that the grand jury had the power to call Cameron as a witness.

We have previously relied on the consequences of prosecutorial inaction to recognize a prosecutorial duty under the Criminal Rules. In *Frink* we noted that Criminal Rule 6(q)'s requirement that the grand jury hear evidence that "will explain away the charge" would be empty if the prosecutor were not required to inform the grand jury of the existence of such evidence.[32] This was so because "if the prosecutor does not present exculpatory evidence to the grand jury, [the grand jury] probably will not hear such evidence." [33] This reasoning is equally appli-cable to the present case. Where the prosecutor, knowing of the accused's desire to testify, does not advise the grand jury of its ability to hear evidence on the accused's behalf, the grand jury is unlikely to call the accused to testify however much it may desire to do so.

Thus, we hold that under Criminal Rule 6(p), the prosecutor must inform the grand jury whenever the accused clearly and unconditionally indicates to the state that he or she desires to testify before the grand jury. Once the prosecutor has informed the grand jury of the accused's desire to testify and reminded the grand jury of its ability to call the accused as a witness under Criminal Rule 6(p), the prosecutor's advisory duty under Criminal Rule 6(I) is fulfilled and the decision whether to permit the accused to testify lies solely within the province of the grand jury.[34]

We note in passing that many other states have seen fit to go well beyond the duties that the Criminal Rules impose on Alaska prosecutors and have instead recognized an accused's right to appear before the grand jury.[35] And it is the official policy of the United States Attorney's Office to ordinarily afford the accused an opportunity to testify before the grand jury where he or she so desires.[36] These practices reflect the well-

---

**31.** *See United States v. Mandujano*, 425 U.S. 564, 573, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) ("It is in keeping with the grand jury's historic function as a shield against arbitrary accusations to call before it persons suspected of criminal activity, so that the investigation can be complete.")

**32.** *Frink v. State*, 597 P.2d 154, 165 (Alaska 1979).

**33.** *Id.*

**34.** Because Criminal Rule 6(p) is permissive, not mandatory, the grand jury can decline to call the accused as a witness. *See Webb v. State*, 580 P.2d 295, 299 (Alaska 1978). Nevertheless, there still remains the prosecutor's Criminal Rule 6(q) duty to present exculpatory evidence; accordingly, if the accused possesses exculpatory evidence and has notified the state that he or she wishes to testify, it is the duty of the prosecutor to present that testimony, even if it is not requested by the grand jury.

**35.** *See, e.g.,* Ga Code. Ann. § 45–11–4(g) (West 2006) ("The accused shall have the right to ap-pear before the grand jury to make such sworn statement as he or she shall desire at the conclusion of the presentation of the state's evidence."); Nev.Rev.Stat. § 172.241(1) (West 2006) ("A person whose indictment the district attorney intends to seek ... may testify before the grand jury if he requests to do so and executes a valid waiver in writing of his constitutional privilege against self-incrimination."); N.M. Stat. Ann. § 31–6–11(C) (West 2007) ("[T]he target of a grand jury investigation shall be notified in writing ... [of] the target's right to testify."); *cf.* Colo Rev.Stat. § 16–5–204(4)(*l*) (West 2007) (requiring grand jury or prosecuting attorney to record reason for declining to hear accused and allowing accused to petition court for hearing on refusal); Neb Rev.Stat. § 29–1410.01 (2006) (same).

**36.** U.S. Dep't of Justice, U.S. Attorney Manual 9–11.152 (Sept.2006) ("[U]nder normal circumstances, where no burden upon the grand jury or delay of its proceedings is involved, reasonable requests by a 'subject' or 'target' of an investigation ... to testify personally before the grand

considered belief that the grand jury system often benefits from hearing testimony from the accused and that such testimony does not disrupt the grand jury's accusatory role.

In sum, the prosecutor must inform the grand jury of the defendant's clear and unconditional request to testify. In this case, the prosecutor may have been attempting to focus the grand jury's attention to what he believed to be the salient legal issues in the case, but by ignoring Cameron's request to testify and the grand jurors' interest in hearing testimony about Cameron's state of mind, the prosecutor did not fulfill his advisory role under Criminal Rule 6(I). Because we do not believe that this error was harmless, Cameron's indictment must be vacated.

## V. CONCLUSION

The judgment of the court of appeals is REVERSED, the judgment of the superior court is REINSTATED, and Neil Cameron's indictment is DISMISSED.

EASTAUGH, Justice, not participating.

jury ordinarily should be given favorable consid-