Pete STEPHAN, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–2918.

Court of Appeals of Alaska.

April 12, 1991.

Rex Lamont Butler, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, District Court Judge.*

## OPINION

ANDREWS, District Court Judge.

Pete Stephan, Jr. was convicted by a jury of three counts of sexual abuse of a minor in the first degree, AS 11.41.434(a)(1), and four counts of sexual abuse of a minor in the second degree, AS 11.41.436(a)(2). Stephan claims the trial court erred by denying his motions for judgment of acquittal on two counts.

The pertinent facts in this case are not in dispute. The defendant met and befriended Anthony Jones in 1979, when they were both living in the state of Washington. Jones was married and had children. Sometime during 1979, the Jones family moved to Anchorage. Stephan moved to Anchorage as well, and the friendship between the two men continued. Jones testified that Stephan visited the Jones' house-

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

hold quite often, occasionally babysat the four children, and was often alone with the children. Stephan committed various acts of sexual abuse on G.A.J., the nine-year-old daughter, while alone with her, between June, 1987, and June, 1988.

G.A.J. testified against Stephan at trial concerning the numerous occasions of sexual penetration and sexual contact. She testified that on one occasion Stephan touched her breasts. She testified that Stephan hugged her in an "odd" way, putting his arms around her neck from behind and putting his hands inside her shirt, touching her breasts and "squeezing" them "all over". This testimony formed the basis for Count I of the indictment charging Stephan with knowingly engaging in sexual contact with G.A.J. in violation of AS 11.41.-436(a)(2). G.A.J. also stated that on another occasion Stephan made oral contact with her vagina. This testimony formed the factual basis for Count VII of the indictment charging Stephan with knowingly engaging in sexual penetration of G.A.J. by committing the act of cunnilingus in violation of AS 11.41.434(a)(1).

At trial, the defendant made a motion to dismiss Count I and VII of the indictment arguing that the evidence was insufficient to prove either charge. The court denied the motions. Stephan claims the trial court abused its discretion in denying these motions. He advances essentially two arguments to support his claim.

First, as to Count I, Stephan argues that the "common" meaning of "female breast" in the context of AS 11.41.436(a)(2) and AS 11.81.900(b)(52) must be reasonably interpreted as referring only to adult females with fully developed breasts. He next points out that the evidence showed that G.A.J. was prepubescent at the time the conduct took place, and that G.A.J.'s breasts were not then developed. He argues, therefore, that the evidence proved that G.A.J. did not have "female breasts". Accordingly, because the victim had no "female breasts", the evidence was insufficient to convict the defendant pursuant to AS 11.41.436(a)(2).

Second, with respect to Count VII Stephan argues that AS 11.41.434(a)(1), which proscribes first-degree sexual assault of a minor, requires proof of actual sexual penetration, and that proof of mere contact by the mouth and tongue is insufficient for a conviction. Because the evidence at trial only proved contact between the defendant's mouth and G.A.J.'s vagina, but did not prove actual penetration of her genitals, he concludes that the charge was not proven.

■ Count I of the indictment charged Stephan with sexual abuse of minor in the second degree in violation of AS 11.41.-436(a)(2), which provides in relevant part:

(a) An offender commits the crime of sexual abuse of a minor in the second degree if

. . . .

(2) being 16 years of age or older, the offender engages in sexual contact with a person who is under 13 years of age. . . .

Alaska Statute 11.81.900 provides definitions for terms used in the provisions of Title 11. Subsection (b)(52) defines "sexual contact" as:

(A) the defendant's

(i) knowingly touching, directly or through clothing, the victim's genitals, anus, or female breast. . . .

(B) but "sexual contact" does not include acts

(i) that may reasonably be construed to be normal caretaker responsibilities for the child, interactions with a child, or affection for a child; or

(ii) performed for the purpose of administering a recognized and lawful form of treatment that is reasonably adapted to promoting the physical or mental health of the person being treated. . . .

The defendant points out that the term "female breast" is not defined in the statute, and maintains that the words "female breast" have two reasonable meanings: 1) the breast of any female regardless of her age or degree of physical maturity, and 2) the breasts of fully developed, mature women. His primary argument, therefore, is that because two reasonable meanings

exist, the term "female breast" is ambiguous. He contends that the ambiguity in the statute must be interpreted in his favor and strictly against the state. *See State v. Andrews*, 707 P.2d 900, 907 (Alaska App. 1985). Therefore, he argues that the narrower of the two definitions should have been adopted by the trial court—that the term "female breast" refers only to physically mature females.

Under this interpretation, because G.A.J was physically immature and had no developed breasts at the time of the offense, the evidence was insufficient to prove him guilty of fondling G.A.J.'s breasts. Stephan believes that the trial judge, thus, erred in denying his motion for judgment of acquittal on Count I.

The state argues that the meaning of the term "female breast" is not ambiguous, but, to the contrary, the legislature clearly intended that the term refer to all females, including prepubescent girls without developed breasts. The state argues that there is no indication in the language of the statute that the legislature intended to exclude prepubescent girls from the statute's protection, and concludes that the trial court was correct in adopting the broader definition.

■ When interpreting the meaning of the language in a statute, the words should be given their reasonable or common sense interpretation in keeping with the legislative intent. *State v. Jones*, 750 P.2d 828, 831 (Alaska App.1988). Because the statute does not define the term "female breast", the court should first look to the dictionary as a source to determine what the legislature intended by using the word. *Michael v. State*, 767 P.2d 193, 197 (Alaska App.1988), *rev'd on other grounds*, 805 P.2d 371 (Alaska 1991).

"Breast" is defined as: "1. either of two milk-secreting glands protruding from the upper, front part of a woman's body 2. a corresponding gland in a female primate 3. a corresponding undeveloped gland in the male.... 5. the upper, front part of the body, between the shoulders, neck and abdomen...." *Webster's New World Dictionary* 174, (2d College Ed.1972).

In short, the term "female breast" refers to the area of a human female's anatomy where the milk-secreting glands are located. It appears that the only function of the word "female" before the word "breast" is to exclude males from the definition. Neither the age of the female nor the degree of the physical development of the breasts is crucial to our understanding of the term.

■ Once the "plain meaning" of a term is determined, however, the court should not apply it mechanically. *Alaska Public Employees Assoc. v. Fairbanks*, 753 P.2d 725, 727 (Alaska 1988). Instead, the court uses a sliding scale approach to statutory interpretation in which it also considers the legislative history of the statute and whether the history reveals a legislative intent and meaning which is contrary to the plain meaning. *Id.* When the meaning of a statute is clear on its face, the party asserting a different meaning bears the burden of demonstrating contrary legislative intent. *Helton v. State*, 778 P.2d 1156, 1158 (Alaska App.1989). "[T]he plainer the language, the more convincing contrary legislative history must be." *Id.* (quoting *State v. Alex*, 646 P.2d 203, 208–09 n. 4 (Alaska 1982)).

Because the meaning of the term "female breast" is quite clear based on the dictionary definition, Stephan bears a heavy burden to demonstrate the different meaning which he advocates. To satisfy the burden, he must show, based on the legislative history of AS 11.41.436(a)(2) and AS 11.81.900(b)(52), that the Alaska Legislature enacted the statute with the intent only to protect post-pubescent girls from "touching" of their breasts, while girls without developed breasts were not intended to be protected from such conduct.

The defendant, however, has not advanced a single argument demonstrating that the statutory history of the sexual abuse statute supports his position. Further, the state notes that in the language of the statute no distinction is drawn between girls with and without developed breasts. The state concludes that had the

legislature intended such a distinction, the statute would have been drafted to include it. Because the distinction is absent, the court can infer that none was meant to be drawn.

Furthermore, the history of AS 11.41.436 can be traced to the Revised Criminal Code drafted in 1978. The Revised Code rewrote prior provisions for sexual assault crimes including sexual abuse of a minor, Former AS 11.41.420(a)(2), which made it a crime for a person to engage in "sexual contact" with another person under thirteen years of age. Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 25, 1978 Senate Journal 1399. The term "sexual contact" appeared for the first time and was defined as it is in the current statute, criminalizing "touchings" of three specific areas of the victim's body: the genitals, the anus, and the female breast. *Id.* at 23–24. Although no definition was provided for these three anatomical regions, there is not the slightest hint in either the Senate's commentary or the drafter's commentary that "female breasts" was intended to refer only to adult females. *Id. See also* Alaska Criminal Code Revision Part I at 71–72 (Tent. Draft 1977).

Based on the language and statutory history of AS 11.41.436 and AS 11.81.900, it is apparent that the legislature intended that the term "female breast" be applied according to its plain meaning—referring to all females regardless of age or degree of development.

Other courts which have reviewed this issue are in accord. In an Oregon case, for example, the court interpreted the meaning of Or.Rev.Stat. § 163.425 which defined sexual abuse as a person subjecting "another person to sexual contact." *State v. Turner*, 33 Or.App. 157, 575 P.2d 1007 (1978). "Sexual contact" was defined by Or.Rev.Stat. § 163.305(6) as "any touching of the sexual or other intimate parts of a person ... or the defendant ... for the purpose of arousing or gratifying the sexual desire of either party." *Id.* 575 P.2d at 1008. The Oregon court had previously held that genitalia and breast were "inti-

mate parts" as a matter of law. *Id.* (citing *State v. Pagel*, 16 Or.App. 412, 518 P.2d 1037 (1974)). The facts in *Turner* involved the touching of the breast of a prepubescent female, and the court considered whether undeveloped genitalia and breasts of girls were also included in the definition as a matter of law. *Id.* 575 P.2d at 1009. The defendant in *Turner* advanced the same argument that Stephan does. He argued that the determination of whether sexual contact was made with the victim's "intimate parts" depended on the age and sexual development of the victim. *Id.* 575 P.2d at 1008. The Oregon court rejected this argument and found that the undeveloped breast could not be excluded from the definition of intimate parts. *Id.* 575 P.2d at 1009. The court reasoned that:

> There can be no serious contention that the genitalia of prepubescent children are not within the meaning of the phrase "intimate parts" even though they have not yet developed from purely excretory to sexual parts. The law should be construed to protect children from the possible psychological effects, present and future, of lascivious handling of their bodies. Within the purpose of the statute, nondeveloped breasts are entirely analogous to sexually nondeveloped genitalia. Children sense these things. If they do not know now, they are likely later to know and react to the significance of such events whether they concern breasts or genitalia.

*Id.* Furthermore, the court went on to reject the argument that the statute should be applied based on the particular circumstances in the case, *i.e.*, the particular body parts of the child involved. The court noted that "if the statute has any application to children at all, then the statute must assume that children have parts which are intimate." *Id.*

Beyond the fact that Stephan cites no legislative history or case law supporting his interpretation, his argument makes no sense bearing in mind the statute's central purpose—to protect children under age thirteen from becoming the objects of adults' sexual gratification. As the state points out, many girls who are twelve

years old and younger have not gone through puberty and do not have fully developed breasts. Under Stephan's theory, all prepubescent girls would be defenseless to the touching and fondling of their breasts. Such a result would defeat the apparent purpose of the law. Clearly the legislature intended just the opposite, and the trial court did not err in so concluding.

■ Count VII of the indictment charged the defendant with sexual abuse of a minor in the first degree in violation of AS 11.41.-434(a)(1). The statute provides in pertinent part:

(a) An offender commits the crime of sexual abuse of a minor in the first degree if

(1) being 16 years of age or older, the offender engages in sexual penetration with a person who is under 13 years of age or aids, induces, causes, or encourages a person who is under 13 years of age to engage in sexual penetration with another person....

"Sexual penetration" is defined in AS 11.-81.900(b)(53) as:

(A) genital intercourse, cunnilingus, fellatio, anal intercourse, or an intrusion, however slight, of an object or any part of a person's body into the genital or anal opening of another person's body....

The evidence at trial in support of Count VII of the indictment proved that the defendant made oral contact with the victim's vaginal area, but that neither the defendant's mouth nor tongue intruded into the genital opening. The trial court found that such contact, even without actual penetration of the genitals, was sufficient to prove "sexual penetration" through the act of "cunnilingus."

The defendant now argues that in the absence of actual penetration of the opening, "sexual penetration" is not proven under the statute. He maintains, therefore, that the trial court erred in denying his motion for judgment of acquittal. He admits, however, that his interpretation of the statute runs contrary to this court's opinion in *Murray v. State*, 770 P.2d 1131, 1139 (Alaska App.1989), and seeks a reversal of that decision.

In *Murray*, the defendant was convicted of two counts of sexual abuse of a minor in the first degree in violation of AS 11.41.-434(a)(1). *Id.* at 1132. On appeal Murray raised several claims of error, one of them being that the trial court misinstructed the jury as to the meaning of the term "cunnilingus". *Id.* The trial court instruction stated that "cunnilingus" and "fellatio" do not require penetration of or by any organ, but that mere contact with the mouth and the genitals was sufficient. *Id.* at 1138.

This court applied the dictionary definition and determined that the meanings of "cunnilingus" and "fellatio" do not require penetration by the mouth or tongue, but that contact between the mouth or tongue and the genitals was sufficient. The defendant's argument was, therefore, rejected.

Because Stephan advances the same argument in this appeal which was previously considered and rejected in *Murray*, and because he asserts no new authority in support of his argument, this court follows the rule set down in *Murray*. Accordingly, we find that the trial judge properly denied Stephan's motion for judgment of acquittal on Count VII of the indictment.

Because the trial court was correct in denying the defendant's motion for judgment of acquittal on Counts I and VII, this court AFFIRMS the convictions on both counts.